JUDGE STITES
delivered the opinion oe the court:
It is conceded that the will of Amos Davis, deceased, which was recorded in Montgomery county, in this state, in 1835, provided for the emancipation of Maria when she attained the age of thirty years.
It was also admitted, on her application for a certificate oí freedom from the county court of Montgomery, that she had then attained the requisite age; and it appears that, in conformity with the act of 1842, (3 vol. Stat. Law, 227,) and the order of court then made, she executed bond, with approved *591 surety, that she would not become a charge upon any county of the state.
The executor of Davis, however, objected to the granting of a certificate of freedom by the court, not because the estate of his testator was insufficient for the payment of debts, nor because of the insufficiency of the surety in the bond which was required by the court, but upon the following grounds and none other:
“1. Because the constitution of Kentucky provides that slaves emancipated in this state shall leave the commonwealth; and
“ 2. Because she had not had a trustee appointed to hire her out, and a sufficient fund had not accrued from her hire to remove her from the commonwealth, as prescribed by the constitution.”
The objections were overruled and the certificate granted, and of this order the executor complains, and seeks a reversal on the same grounds relied on in the county court.
We have been unable to perceive any ground on which a reversal can be had in behalf of the executor, or in what manner the estate he represents has been prejudiced.
If, as he contends, Maria’s right to freedom has accrued since the adoption of the constitution of 1850, and the Revised Statutes, and she comes within the provisions of chap. 93, art. 9, relating to the emancipation of slaves, it would seem to follow that the county where- she was emancipated was alone interested in the slave, or could alone complain of the order.
There does not appear to have been any provision made by the testator or his executor for Maria’s removal beyond the state, and in such cases it is expressly provided by sec. 3 of the chapter supra, that the county court shall take charge of the slave, and cause the same to be hired out and kept at service until a sufficient sum is raised for that purpose, &c.
Section 4 provides for the appointment of trustees to superintend and control such slaves, and prescribes their duties, &c.; and section 5 invests such trustees with the same rights and privileges, and subjects them to the same responsibilities, that the masters of such slaves had and were subject to. In addi *592 tion to this, it is provided by section 13, that “ all slaves emancipated, who shall refuse to give their assent to be removed out of the state as required, shall be hired out thereafter under the provisions of this article for the benefit of the county, in such mode as the county court may direct, until such time as they shall give their assent, and actually remove out of the state.”
Here, as we have seen, there is no complaint that Maria is not free under the will, no assertion of a right of property in her, no objection that the rights of creditors have not been protected, and no interest whatever in the slave disclosed in behalf of the estate.
So that, if she is free, but not entitled until since the constitution of 1850 and the Revised Statutes took effect, it is the county of Montgomery, and not the estate of the testator, which is prejudiced by the order complained of. A private citizen has no right to complain of an injury or grievance affecting alone the public interest. (9 B. Mon., 382.) And, as repeatedly held by this court, a party cannot obtain a reversal of a judgment or order not affecting him prejudicially.
If, however, her right to freedom had accrued or was accruing when the act adopting the Revised Statutes was passed, which expressly saves and protects all then existing rights, “ whether established, accrued or accruing,” then the laws in force prior thereto govern the case, and the question arises whether, under those laws, the estate of the testator or the executor has been prejudiced.
The act of 1841, (3 Stat. Law, 226) forbid the issual of a certificate of freedom to a slave emancipated by last will or testament, except by the assent of the executor, and also forbid such assent, unless it should appear that the estate of the testator was sufficient for the payment of debts. But it also made it the duty of the personal representative to assent to the emancipation .of such slave whenever he was satisfied the estate of the decedent was sufficient for the payment of debts
That the estate was sufficient for the payment of debts may be fairly assumed from the fact that no objection was raised on that score by the executor; and likewise from the lapse of time that had intervened between the death of the testator and *593 the application for a certificate of freedom. It 'was therefore the duty of the executor (under the act of 1841) to assent, and it may be inferred from the record that this assent was withheld only because he believed that the emancipation and the issual of the certificate had to be controlled, not by the laws in force when the will was recorded, but by the Revised Statutes.
The only interest, then, that the executor could have had under the previous law, was to see that Maria executed a bond, in conformity with the act of 1842, that she ivould not become a charge on any county in the state, and thus protect the estate, of his decedent from liability on that ground. This, as we have seen, was done, and the estate was thereby exonorated from such liability.
It seems to us that in no aspect of the case has the estate of the testator been prejudiced by the order, and that the personal representative has therefore no reason to complain.
Wherefore, the order is affirmed.